UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 07-00678-CJC(MLGx)                               Date: May 21, 2008

Title: JUICE IT UP CORPORATION v. DHIRAJ BUDHRAJA

PRESENT:

**HONORABLE CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE**

Michelle Urie                                                  N/A
Deputy Clerk                                            Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:   ATTORNEYS PRESENT FOR DEFENDANT:

None Present                                          None Present

**PROCEEDINGS: (IN CHAMBERS) ORDER FINDING DEFENDANT DHIRAJ BUDHRAJA IN CIVIL CONTEMPT OF COURT** [filed 4/25/08]**.**

Plaintiff Juice It Up Franchise Corporation ("Juice It Up") has filed a motion seeking an order to show cause why Defendant Dhiraj Budhraja should not be held in contempt for allegedly violating the Court's July 17, 2007 preliminary injunction (the "Injunction"). The Injunction prohibited Mr. Budhraja from, *inter alia*, using any of Juice It Up's trademarks in commerce, engaging in acts of unfair competition or false designation of origin, or using Juice It Up's name in the solicitation of fruit beverages. (*See* Declaration of John Bowerbank ("Bowerbank Decl.") ¶ 3, Ex. B.) Juice It Up contends Mr. Budhraja violated the injunction by advertising his smoothie store as a former Juice It Up franchise available for sale without payment of franchise fees or royalties. Mr. Budhraja argues that he has not violated the injunction and any alleged violation is the result of unilateral statements made by his sales agents. For the following reasons, the Court finds that Mr. Budhraja has violated the Injunction and is in civil contempt of Court.

**Background**

Juice it Up was granted a preliminary injunction during the pendency of its trademark dispute with former franchisee Dhiraj Budhraja. The Injunction prohibits Mr. Budhraja from, among other things, (i) using in commerce, or facilitating the use in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.   SACV 07-00678-CJC(MLGx)                                          Date: May 21, 2008
                                                                              Page 2

---

commerce, of "Juice It Up" (Word Mark); (ii) engaging in any acts of federal, state, or common law trademark infringement, trademark dilution, false designation of origin, or unfair competition that would damage or injure Juice It Up; and (iii) using Juice It Up's name in solicitation of fruit beverages.  (*Id*.)  The Injunction applied to Mr. Budhraja "and all his agents, servants, assigns and those acting in concert with him . . . ."  (*Id*.)

Juice It Up has submitted evidence that Mr. Budhraja violated the Injunction by advertising for the sale of his smoothie shop, Smoothie Time, as a former Juice It Up franchise.  (*See id*. at Exs. F-I.)  For example, in an advertisement on BizBen.com, Mr. Budhraja's smoothie store was described as follows:

> Here's Your Chance To Own A Former Juice It Up! Franchise Without The Franchise Fees.  Since 1995, Juice It Up! Has Been An Innovator In The Smoothie And Fresh Juice Industry With Signature Blends Setting New Standards For Taste And Nutrition. Originally From The Beaches Of Southern California, Juice It Up! Is All About Spreading Perpetual Summer Across America.  This Former Franchise Has Kept The Same Concept.
>
> With Start-Up Costs For A New Juice It Up! Franchise Totaling Up To $300,000, You Can Take Advantage Of This Juice Bar At Half The Cost! Lease Expires 2009 And Has A 5 Year Option. Located In Approx 740 Sq. Ft. This Juice Bar Is Easy To Operate. Will Train.

(*Id*. at Ex. H.)  Another BizBen.com advertisement describes the store as "Former Franchise Juice Store.  Same System, Same Style, Same Flavor, No More Royalty Here! This Business Used To Be One Of Major Juice Franchises, Located In A Very Busy Shopping Center, Right Next To Star Bucks [sic], Near High School."  (*Id*. at Ex. I.)  The agent responsible for this listing confirmed via telephone that the store was a former Juice It Up franchise. (Declaration of A.J. Bozlak ("Bozlak Decl.") ¶ 5.)  Juice It Up also cites a Century 21 advertisement (which includes Smoothie Time's financial data) that describes the store's relation to Juice It Up: "This store used to be Juice It Up for 3 years and from last 1 year owner doesn't want to pay royalty so he converted this store to Smoothie Time-non franchise.  Still using same equipment."  (*Id*. at Ex. G.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No.   SACV 07-00678-CJC(MLGx)                                              Date: May 21, 2008
                                                                                                              Page 3

---

Juice It Up has also submitted the transcript of a telephone conversation between an employee of Juice It Up and one of Mr. Budhraja's sales agents, Manisha Patel. During the conversation, Ms. Patel explains that "[Mr. Budhraja] did not want to pay 8% in royalties so he just changed the name of the smoothies. He is not a franchise anymore. It's basically a Juice It Up store with a different name. All the equipment inside the store is from Juice It Up. You can contact Juice It Up corporate if you want to use their name." (Bozlak Decl. ¶ 3.) Ms. Patel further states that Mr. Budhraja's store has been listed for sale for two months. (*Id*.)

**Analysis**

If a party subject to an injunctive order by the court disobeys such an order, that party may be held in contempt. *Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 831-32 (1994). Contempt proceedings may be either criminal or civil in nature. *Id*. at 826. Civil contempt proceedings are intended to compensate the complainant for loss caused by the violation, and/or to coerce future compliance with the terms of the injunction. *See id*. at 825-27; *United States v. Powers*, 629 F.2d 619, 627 (9th Cir. 1980). By contrast, criminal contempt proceedings, typically initiated by the Court rather than a party, are intended to punish the violator and vindicate the authority of the Court. *See id.*

Civil contempt is established where there is a clear and definite order of the court, the contemnor knows of the order, and the contemnor violates the order. *See United States v. City of Jackson, Miss.*, 359 F.3d 727, 731 (5th Cir. 2004). These elements must be proven by clear and convincing evidence. *See Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992). Clear and convincing evidence is that which creates in the mind of the trier of fact "a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts." *Cruzan by Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 285 n.11 (1990). If the facts are known and easily ascertained, there is generally no right to a jury trial. *Int'l Union, UMWA*, 512 U.S. at 833; *United States v. Rylander*, 714 F.2d 996, 1005 (9th Cir. 1983).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.   SACV 07-00678-CJC(MLGx)                                            Date: May 21, 2008
                                                                                                              Page 4

     Mr. Budhraja offers three challenges to Juice It Up's motion for contempt.  First, Mr. Budhraja argues that he had no direct involvement in the content of the advertisements and "was not consulted prior to the placing of [the advertisements]." (Opp'n at 9.)  While Mr. Budhraja's argument may be relevant to the willfulness of his violation, it is irrelevant to establishing whether the injunction was violated.  The terms of the injunction apply equally to both Mr. Budhraja and his agents.  (*See* Bowerbank Decl. ¶ 3, Ex. B.)  Because Mr. Budhraja authorized real estate brokers to make statements about his store for purposes of selling it, he is responsible for the content of those statements.  That Mr. Budhraja may have taken no affirmative acts or harbored any wrongful intent to violate the injunction is not a defense.  *See Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985) (*citing McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)) ("Although willfulness is a necessary element of criminal contempt, we find it significant that civil contempt may be established even though the failure to comply with the court order was unintentional.")

     Second, Mr. Budhraja argues that the transcript of the telephone conversation between Mr. Bozlak and Ms. Patel is inadmissible hearsay.  Under Federal Rule of Evidence 801(d)(2)(C), a statement made "by a person authorized by the [party-opponent] to make a statement concerning the subject" is not hearsay if the statement is offered against the party-opponent.  FED. R. EVID. 801(d)(2)(C); *see Gomez v. Rivera Rodriguez*, 344 F.3d 103, 116 (1st Cir. 2003).  Here, as described above, the real estate brokers were Mr. Budhraja's agents and were therefore authorized to make statements on his behalf with respect to the Smoothie Time store.  Accordingly, those statements are not hearsay and are admissible evidence.

     Finally, Mr. Budhraja argues that the statements could not have violated the injunction because they were true statements about his past association with Juice It Up.  He notes that all references to Juice It Up include an indication that the store is a *former* Juice It Up franchise, and thus the public is not misled.  While Mr. Budhraja may advertise his former association with Juice It Up, he may not do so in such a way as to mislead the public that the assets of Smoothie Time include Juice It Up's trademarks, goodwill or proprietary information.  For example, one advertisement tells prospective purchasers that they can have the benefits of Juice It Up's trademarked formulas and style without paying royalties to Juice It Up.  (*See* Bowerbank Decl., Ex. I.)  Similarly, one of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.   SACV 07-00678-CJC(MLGx)                                     Date: May 21, 2008
                                                                                                   Page 5

---

Mr. Budhraja's sales agents stated that Smoothie Time is operating as a Juice It Up store, albeit under a different name.  (Bozlak Decl. ¶ 3.)  This may lead a potential purchaser to believe he or she can continue to use Juice It Up's recipes, flavors, goodwill or other protected assets upon purchasing Smoothie Time.

Upon considering all of the evidence before it, including the arguments of counsel, the Court finds that Juice It Up has established by clear and convincing evidence that Mr. Budhraja has violated the terms of the Injunction.  Mr. Budhraja is misappropriating Juice It Up's trademark and goodwill for his own financial gain.  More specifically, Mr. Budhraja has advertised the sale of his Smoothie Time store by emphasizing his former relationship with Juice It Up in such a manner as to mislead potential purchasers into believing they can purchase trademarked assets and proprietary information of Juice It Up directly from Mr. Budhraja.  Specifically, the advertisements contain direct references to the Juice It Up trademark.  (Id. at Ex. H.)  Another tells potential owners that they will receive the benefits of Juice It Up, but "No More Royalt[ies] Here!"  (*Id*. at Ex. I.)  Through these advertisements, Mr. Budhraja encouraged unfair competition with Juice It Up, explicitly prohibited under the terms of the Injunction.  (*See id*. at Ex. B.)  Mr. Budhraja is responsible for the acts of his agents, and he cannot escape the Court's authority by making prohibited statements through third parties.  *See Perry*, 759 F.2d at 705.  As the agents were acting on his behalf, Mr. Budhraja knew or should have known of the content of the advertisements.

In considering sanctions for Mr. Budhraja's violation of the Injunction, the Court must consider the following factors: the harm from noncompliance, the probable effectiveness of the sanction, the contemnor's financial resources and the burden sanctions may impose, and the contemnor's willfulness in violating the injunction. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947); *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986).  Moreover, "in selecting contempt sanctions, a court is obligated to use the least possible power adequate to the end proposed."  *Spallone v. United States*, 493 U.S. 265, 280 (1990).

Juice It Up proposes two sanctions to remedy Mr. Budhraja's violations.  First, Juice It Up seeks $129,000 for past violations of the Injunction - $1,000 per day from the date of the first advertisement to the date of the contempt hearing.  Such an award,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No.   SACV 07-00678-CJC(MLGx)                                  Date: May 21, 2008
                                                                                                    Page 6

---

untethered to any actual injury by the complainant, is punitive and therefore indicative of criminal contempt.  Such a sanction is inappropriate in this civil contempt proceeding.  However, Juice It Up has also requested repayment of its attorneys' fees in bringing the instant motion, totaling $2,925.  This amount is a proper representation of the injury suffered by Juice It Up, and an amount necessary to compensate it for its injury.  *See Harcourt Brace Jovanovich Legal & Prof. Pub., Inc. v. Multistate Legal Studies, Inc.*, 26 F.3d 948, 953 (9th Cir. 1994) (authorizing the court to award attorneys' fees in a civil contempt action).  As there is no evidence Mr. Budhraja's violations are continuing, it is unnecessary for the Court to impose an on-going fine in an effort to coerce Mr. Budhraja's future compliance with the Injunction.  However, if the Court finds future violations of the Injunction by Mr. Budhraja or his agents, he may be subject to more serious sanctions, including criminal contempt proceedings.

### Conclusion

For the foregoing reasons, Mr. Budhraja is found in civil contempt of court for violating the terms of the Court's July 17, 2007 preliminary injunction.  Mr. Budhraja is ordered to pay Juice It Up compensation in the amount of $2,925 within ten days, which represents Juice It Up's total attorneys' fees in policing Mr. Budhraja's compliance with the preliminary injunction.

sdt

MINUTES FORM 11
CIVIL-GEN                                                                                      Initials of Deputy Clerk: MU